IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER REINHARD BROWN (01) | No. 4:24-CR-126-P<br>**Supersedes Indictment Returned**<br>**on May 21, 2024** |

**SUPERSEDING INFORMATION**

The United States Attorney charges:

At all times material to this Information:

Introduction and Definitions

1. At all times relevant to the conspiracy Unindicted Coconspirator 1 was a resident of Southlake, Texas.

2. At all times relevant to the conspiracy **Christopher Reinhard Brown** was a resident of Atlanta, Georgia.

3. Nottingham Ventures, LLC ("NVH") was a company established, owned, and controlled by Unindicted Coconspirator 1 for the purpose of furthering the fraudulent scheme described below.

4. Brown Capital Funding International ("BCFI") was a company established, owned, and controlled by **Brown**, and was registered in the state of Georgia, purporting to be a "leading private equity firm." In reality, BCFI was a sham company set up for the purpose of furthering the fraudulent scheme described below.

Information - Page 1

Count One
Conspiracy to Commit Wire Fraud
(Violation 18 U.S.C. § 371 (18 U.S.C. § 1343))

5. Paragraphs 1 through 4 of this Information are realleged and incorporated.

6. Beginning in or about June 2020, and continuing until in or about April 2022, in the Fort Worth Division of the Northern District of Texas and elsewhere, defendant, **Christopher Reinhard Brown**, Unindicted Coconspirator 1 and Unindicted Coconspirator 2, together with others known and unknown, did knowingly and willfully combine, conspire, confederate and agree with one another to commit wire fraud, in violation of 18 U.S.C. § 1343, that is, to knowingly devise and execute a scheme and artifice to defraud and to obtain property by means of materially false pretenses, representations, and promises, and for the purpose of executing the scheme and artifice and attempting to do so, caused to be transmitted by means of wire communications in interstate and foreign commerce writings, signs, signals, pictures, and sounds.

Object of the Conspiracy and Scheme to Defraud

7. The object of the conspiracy was for **Brown**, Unindicted Coconspirator 1 and Unindicted Coconspirator 2 to fraudulently obtain money from loan applicants and investors under false promises and pretenses, to illegally enrich **Brown**, Unindicted Coconspirator 1 and Unindicted Coconspirator 2.

## Manner and Means of the Conspiracy and the Scheme to Defraud

8. The conspiracy and fraud scheme operated as follows:

9. BCFI had a website advertising various loan programs and falsely claiming to be a 50-year-old company. BCFI purported to provide 100% funding of loans with no maximum loan amount and a minimum loan amount of $40 million. **Brown** solicited both investors/creditors (to provide funding for loans) and borrowers.

10. In order to solicit loan applicants and operate BCFI, **Brown** employed official BCFI brokers. These BCFI brokers, often, had little to no professional financial education or background. **Brown** did not vet these brokers, nor inquire as to their backgrounds. **Brown** referred to these brokers as "gatekeepers," citing them as the only way to actually deal with **Brown**. Unindicted Coconspirator 1 was one of these brokers.

11. In order to qualify for a loan with BCFI, **Brown** required that loan applicants put 25 percent of the requested loan amount into a "Good Faith Account," ("GFA") prior to funding. If a loan applicant could not afford 25 percent, then **Brown** offered them the option to lease a synthetic GFA. With a synthetic GFA, loan applicants could pay a fee to have an outside entity or individual establish the GFA on their behalf. These outside entities or individuals could send bank statements and/or proofs of funds to show that they established a GFA account. Unindicted Coconspirator 2 was one of these outside individuals providing synthetic GFAs.

*Loan Victims*

12.     **Brown**, Unindicted Coconspirator 1 and Unindicted Coconspirator 2 defrauded borrowers ("Loan Victims"). Specifically, **Brown** and Unindicted Coconspirator 1 told Loan Victims that they would need to deposit at least 25% of the sought after loan amount into a "Good Faith Account" ("GFA"). **Brown** and Unindicted Coconspirator 1 presented GFAs as a far less risky option than the traditional means of providing collateral or a down payment for the purposes of the loan because the funds were not owned by a bank and could be withdrawn at any time. Once the GFA was verified by BCFI, the loans should have funded. **Brown** and Unindicted Coconspirator 1 represented that BCFI would not have access to the funds in the GFA other than to verify that a legitimate account was established. **Brown** and Unindicted Coconspirator 1 also created contracts stating that money put into the GFA would be returned to the Loan Victims regardless of whether or not the loan with BCFI funded.

13.     Unindicted Coconspirator 1—using his business NHV—would enter into contracts ("Buy-Sell Agreements") with Loan Victims who were, at all relevant times, located in Canada and other locations outside the state of Texas. **Brown**, while in the state of Georgia, signed and sent via email to the Loan Victims, who were outside of the state of Georgia, "Letters of Intent" to fund their requested loans.

14.     To prove that a GFA account had been established, Unindicted Coconspirator 1 would email fraudulent bank statements—obtained from Unindicted Coconspirator 2— from within the Northern District of Texas to Loan Victims, in Canada and other locations outside of the state of Texas, purporting to show the Loan Victims' money in a

GFA. In reality, however, no actual GFA was ever established, and Unindicted Coconspirator 1 and his coconspirators diverted Loan Victims' money for personal use.

15. Unindicted Coconspirator 1 also promised Loan Victims that their money was "not at risk at any point and can be withdrawn if there is non-performance." Further, **Brown** guaranteed repayment of funds if a loan did not fund within 120 days.

16. Based upon these fraudulent representations and promises, Loan Victims wired a total of approximately $3.275 million to an account as directed by Unindicted Coconspirator 1.

17. Despite these representations and promises, **Brown** and Unindicted Coconspirator 1 have refused to return Loan Victims' GFA contributions.

*Investor Victims*

18. **Brown**, Unindicted Coconspirator 1 and Unindicted Coconspirator 2 also defrauded investors ("Investor Victims") by falsely promising a return on investment. Specifically, **Brown**, Unindicted Coconspirator 1 and Unindicted Coconspirator 2 induced Investor Victims to deposit money into GFAs to help fund a loan when, for example, a Loan Victim did not have the required 25% of the loan amount. Unindicted Coconspirator 1—using his business NHV—would enter into Buy-Sell Agreements that promised that Investor Victims would receive 125% of their initial contribution if the loan "funded." The Buy-Sell Agreements also promised that if the loan failed to fund, Investor Victims would receive their "initial contributions plus interest at the rate of 15% per annum."

19. Unindicted Coconspirator 1 and **Brown** also communicated with Investor Victims and brokers representing Investor Victims via interstate telephone and email regarding the terms of their investments. During phone calls with **Brown** and Unindicted Coconspirator 1, for example, **Brown** falsely represented that his ability to fund loans comes from family wealth. In reality, **Brown** did not have the ability to fund loans nor access to large sums of money. These types of misrepresentations instilled false confidence with the investors, who were investing on behalf of someone else's potential loan.

20. **Brown** directed Investor Victims and brokers representing Investor Victims to BCFI's website, browncapital.biz, which detailed BCFI's loan process and the GFAs. **Brown** mispresented BCFI on the website as being a fifty-year-old company, able to finance business ventures with no maximum loan amount, and able to provide 100 percent financing with no collateral required. Investor Victims directed by **Brown** to the website also read about the GFA process, including the synthetic GFA.

21. Unindicted Coconspirator 1, while in the Fort Worth Division of the Northern District of Texas, emailed a Consulting Agreement to brokers for Investor Victims, who were located in Arizona. The Consulting Agreement falsely claimed that "the funds are not at risk at any point and can be withdrawn if there is a non-performance of any of the contractual obligations by Brown Capital Funding International."

22. Based upon these fraudulent representations and promises, Investor Victims wired approximately $5 million to an account as directed by Unindicted Coconspirator 1.

23. Once Investor Victims wired their funds to Unindicted Coconspirator 1, Unindicted Coconspirator 1 emailed the Investor Victims fraudulent bank statements created by Unindicted Coconspirator 2 from within the Northern District of Texas to Investor Victims in Washington state and other locations outside of the state of Texas, purporting to show the Investor Victims' money in a GFA. In reality, however, no actual GFA was ever established, and Unindicted Coconspirator 1 and his coconspirators diverted Investor Victim's money for personal use.

24. When no loans funded and Investor Victims' funds were not returned, **Brown**, while in the state of Georgia, sent Investor Victims, who were outside the state of Georgia, "Guarantee Agreements" via email providing personal guarantees that if the loans did not fund within 45 days, then **Brown** would pay back the Investor Victims their funds plus 15 percent. In reality, **Brown** had no ability to pay back the Investor Victims.

25. Both **Brown** and Unindicted Coconspirator 1 continued to provide false excuses via email to Investor Victims, urging them to leave their money in a GFA which **Brown** and Unindicted Coconspirator 1 knew did not exist. In some of these emails, **Brown** and Unindicted Coconspirator 1 conspired to mask the author. **Brown** rewrote verbatim text messages from Unindicted Coconspirator 1, then sending them via email from his email account, while in Atlanta, Georgia, to make it appear as if **Brown** composed them.

26. Despite these representations, promises, and excuses, as late as April 2022, Unindicted Coconspirator 1 had emailed Investor Victims stating he could not return their investment funds, but that he was working on other deals to try to return the money.

Overt Acts

27.     In furtherance of the conspiracy and to effect its object, the following overt acts, among others, were committed in the Fort Worth Division of the Northern District of Texas and elsewhere, by at least one conspirator:

    a.     On or about July 16, 2020, Unindicted Coconspirator 1, while in the Northern District of Texas, emailed Loan Victims, who were all outside the state of Texas, a Consulting Agreement fraudulently promising that the Loan Victims' funds were "not at risk at any point and can be withdrawn if there is non-performance."

    b.     On or about July 16, 2020, Unindicted Coconspirator 1, while in the Northern District of Texas, emailed Loan Victims, who were all outside of the state of Texas, a Buy-Sell Agreement falsely promising that the Loan Victims would receive their money back regardless of whether the loan with BCFI funded or not. This document was executed by all parties, including Loan Victims and Unindicted Coconspirator 1, via an online electronic platform.

    c.     On or about September 23, 2020, Unindicted Coconspirator 1, while in the Northern District of Texas, emailed Loan Victims fraudulent JP Morgan Chase bank statements created by Unindicted Coconspirator 2 purporting to show a GFA established with Loan Victims' money. In reality, no such account ever existed.

    d.     On or about July 16, 2020, **Brown**, while in Georgia, emailed Unindicted Coconspirator 1, who was in the Northern District of Texas, a "Letter of Intent" to fund a loan of approximately $125 million, which Unindicted Coconspirator 1 then sent to a

Loan Victim, who was outside the state of Texas. This document was executed by **Brown** and Loan Victim.

  e. On or about July 30, 2020, **Brown**, while in the state of Georgia, emailed Unindicted Coconspirator 1, who was in the Northern District of Texas, a "Profit Participation Agreement," executed by **Brown**, listing legal representation by an attorney located in Georgia. Shortly thereafter, Unindicted Coconspirator 1 emailed the agreement to a loan victim. **Brown** falsely listed a Georgia attorney as representing BCFI in order to lend credibility to BCFI.

  f. On or about December 30, 2020, **Brown**, while in the state of Georgia, emailed an Investor Victim, who was outside of Georgia, a "Guaranty," stating that **Brown**, both personally and through BCFI, would return the Investor Victims funds after a period of 45 days should a loan not fund. This document was executed by **Brown** as an individual and **Brown** as the managing member of BCFI.

  g. On or about September 7, 2021, Unindicted Coconspirator 1 emailed Investor Victims fraudulent JP Morgan Chase bank statements, created by Unindicted Coconspirator 2 purporting to show a GFA with the Investor Victims' money being held in the account. In reality, no such account ever existed.

  h. On or about July 26, 2021, **Brown** emailed a Loan Victim stating that their GFA account and loan were still active. Later in the email, **Brown** said that he could not provide details regarding the loan because of **Brown**'s attorneys. In reality, neither **Brown** nor BCFI were represented by attorneys. Further, the language used by **Brown**

was composed by Unindicted Coconspirator 1 and sent via text message to **Brown** on July 24, 2021.

All in violation of 18 U.S.C. § 371 (18 U.S.C. § 1343).

LEIGHA SIMONTON
UNITED STATES ATTORNEY

_____
BRANDIE WADE
Assistant United States Attorney
Texas State Bar No. 24058350
1100 Commerce Street, Third Floor
Dallas, Texas, 75242
Telephone: 214-659-8600
Facsimile:  214-659-8805
Email:  Brandie.wade@usdoj.gov

Information - Page 10

**U.S. Department of Justice**
United States Attorneys Office
*Northern District of Texas*
*Burnett Plaza Ste 1700*
*801 Cherry Street, Unit 4*
*Fort Worth, TX 76102*

Official Business



RECEIVED
JUL 2 2024
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Case 4:24-cr-00126-P    Document 19    Filed 07/12/24    Page 11 of 11    PageID 76

**U.S. Department of Justice**
United States Attorneys Office
*Northern District of Texas*
*Burnett Plaza Ste 1700*
*801 Cherry Street, Unit 4*
*Fort Worth, TX 76102*

Official Business